UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:                                              Chapter 7

SUN PROPERTY CONSULTANTS, INC.                      Case No.: 16-72267-las

                          Debtor.
----------------------------------------------------------X
MERCHANT ACQUISITIONS, INC.

                          Plaintiff               Adv. Pro. No.: 20-8057-las

      v.

DIFFICILE REALTY CORP.


                          Defendant.
----------------------------------------------------------X

## AFFIRMATION IN OPPOSITION TO TO DEFENDANT'S MOTION FOR AN ORDER VACATING PLAINTIFF'S NOTICE OF PENDENCY

      TEJAL SHAH, ESQ., an attorney duly admitted to practice law in the Courts of the State of New York and duly authorized to practice before this Court, hereby affirms the following under the penalties of perjury:

      1.     I am the attorney for the Plaintiff MERCHANT ACQUISITIONS, INC. ("Merchant" or "Plaintiff") and I am fully familiar with all the facts and circumstances of this matter.

      2.     I submit this Affidavit in support of Plaintiff's Opposition to Defendant's Motion for an Order Vacating or Cancelling the Plaintiff's Notice of Pendency pursuant to (i) 11 U.S.C. § 105(a) and N.Y. C.P.L.R. §6501 and 6514(b) vacating or directing the Clerk of Nassau County to cancel a notice of pendency and (ii) pursuant to C.P.L.R. §6514(c), awarding Defendant its costs and expenses, including its reasonable attorneys' fees occasioned by a notice of pendency.

1

3.   Defendant asserts that Plaintiff's notice of pendency, dated December 26, 2019, filed with the Nassau County Clerk under Index No. 615796/2019 (the "Notice of Pendency"), should be vacated because Plaintiff's complaint filed with the Supreme Court of Nassau County, Index No. 615796/2019 (the "Complaint") seeks only money damages based upon a secured interest in personal property.   (The Notice of Pendency and Complaint are annexed hereto as Exhibit A and B, respectively.)

4.   However, this is clearly an erroneous characterization of Plaintiff's Complaint which clearly bases its justification for its Notice of Pendency on the fixtures and improvements affixed and/or appurtenant to the premises that is the subject of the notice of pendency and not on the unlawful conversion of its personal property pursuant to a valid first priority security interest which encompass the first two causes of action.

5.   Plaintiff sustains its right to its Notice of Pendency in the third cause of action in its Complaint because the fixtures and improvements affixed to the premises that is the subject of the notice of pendency substantially increase the value of the premises such that removal of these fixtures and improvements would significantly decrease the fair market value of the premises, thus, affecting the "possession, use, or enjoyment of real property." C.P.L.R.  §6501.

**PLAINTIFF'S DULY PERFECTED SECURED LIEN INTEREST**

6.   Defendant alleges that it should be awarded sanctions, including costs and expenses, because Plaintiff failed to demonstrate any documented security interest aside from expired U.C.C.-1 and U.C.C.- 3 Financing Statements.  However, this is a specious claim because Plaintiff is not required to submit any documents evidencing its security interest to its Complaint to substantiate its allegations (although Plaintiff did annex its U.C.C. 1 and 3 filings to the Complaint)

and filed UCC-1 and 3 financings statements with the NYS Department of State on its face evidence the validity of Plaintiff's secured interest.

7. Plaintiff duly perfected its first priority lien in and security interest in, *inter alia*, the <u>fixtures and improvements</u> (the "Fixtures and Improvements") existing at the the premises and within the restaurant by the name of H.R. Singleton's located at 4019-4021 Hempstead Turnpike, Bethpage, NY 11714 a/k/a 150 Hicksville Road, Bethpage, NY 11714 (the "Premises") through the filing of UCC-3 Amendments, assigning to it, the interests of predecessor AC 12 LLC, with the Secretary of State of New York**.** (The UCC-3 Amendments and UCC-1 Filings are annexed hereto as Exhibit C.)

8. The Premises is a shopping center formerly owned by the entity Sun Property Consultants, Inc. ("Sun Property") the debtor in this Chapter 7 proceeding in U.S. Bankruptcy Court, Eastern District of NY (the "Bankruptcy Court"), Case No.: 16-72267-las.

9. Raj and Raj Realty Ltd. ("R&R"), owner of H.R. Singleton's, became the anchor tenant at the Premises with the execution of a Memorandum of Lease (the "First Lease") with Sun Property as landlord. The term of this lease was for twenty (20) years commencing January 2, 1988 and terminating on January 1, 2008. A subsequent Memorandum of Lease (the "Second Lease") was executed by the same parties for a term of thirty-one (31) years commencing February 1, 1988 and terminating on January 31, 2019. (The First Lease and Second Lease are annexed hereto as Exhibit D.)

10. Plaintiff became first priority lien holder of the Fixtures and Improvements through duly executed assignment agreements with Plaintiff's predecessor in interest AC 12 LLC. (The two Allonges, two Assignment of Assignment of Leases and Rents, Assignment of Cause of Action, Assignment of Gap Leasehold Mortgage and Security Agreement, Assignment of

Consolidation, Extension, and Modification Agreement (the "AC12 LLC to Merchant Assignment Documents") are annexed hereto as Exhibit E.)

11. AC12 LLC'S predecessor in interest was Santander Bank who originally loaned the principal owner of R&R an original principal amount of $2,880,000, which was securitized by *inter alia*, the assets and fixtures and improvements of H.R. Singleton's and the Premises.

12. On or about October 27, 2009, Santander Bank, N.A., successor by merger to Sovereign Bank, N.A. f/k/a Sovereign Bank ("Santander") granted Quinn Restaurant Corporation ("Quinn") (the owner of R&R d/b/a H.R. Singleton's and Quinn was the same person) a loan in the original principal amount of $2,880,000, pursuant to the terms and conditions of a Business Loan Agreement (the "Loan Agreement"). (The Loan Agreement is annexed hereto as Exhibit F.)

13. As evidence of the indebtedness owed to Santander under the Loan Agreement, Quinn executed and delivered a Consolidated and Restated Mortgage Note, dated October 27, 2009 (the "Note") in favor of Santander, in the amount of $2,880,000.

14. As an inducement for Santander to grant the loan to Quinn, and as collateral security for the payment obligations under the Note, Quinn and Raj and Raj Realty Ltd. d/b/a H.R. Singleton's, *inter alia,* executed a corporate guaranty and Security Agreement, dated October 27, 2009, granting Santander a security interest in the assets of H.R. Singleton's, <u>including all fixtures and improvements</u>. Santander perfected its security interest in the assets of R&R through the filing of a UCC-1 liens with the NYS Department of State. (The Security Agreement, Part 1 is annexed hereto as Exhibit G and Security Agreement, Part 2 is annexed hereto as Exhibit H). See Ex. C, UCC-1)

15. In or about June 17, 2015, Santander sold the loan to AC12 LLC, thus, all the loan documents, including the Loan Agreement, Note, and Security Agreement ("Loan Documents")

were transferred and assigned to AC12 LLC.  (The sworn Affidavit of R. Lupo Talamo, sole member of AC 12 LLC, attesting to AC 12 LLC's purchase of the loan documents from Santander is annexed hereto as Exhibit I.)  Subsequent to the assignment of Santander to AC12 LLC, the Plaintiff assumed first priority ownership interest in the Loan Documents through the AC12 LLC to Merchant Assignment Documents.

### HISTORY OF THE FIXTURES AND IMPROVEMENTS

16. From 2008 - 2010, R&R paid William Hauk ("Mr. Hauk") and his contracting companies by the names of Custom Carpentry Corp. and DND Development Corp. (the "contracting companies"), as construction manager and general contractor, Four Million Five Hundred Thousand Dollars ($4,500,000) to perform building and contracting services at the Premises and restaurant H.R. Singleton's.  (The Affidavit of William Hauk ("Hauk Aff."), President of the contracting companies is annexed to this Affirmation in Opposition and incorporated by reference.)

17. These two contracting companies were contracting and building companies serving Long Island since 1990 with a large roster of commercial clients in different business areas, but mostly restaurants and shopping centers.  (See Hauk Aff., ¶ 2)

18. From 2003 – 2010, the owner of R&R hired the contracting companies as construction manager and general contractor for multiple multi-million dollar contracting jobs at his conglomerate of restaurants in Long Island and NYC, including but not limited to the following: (a) $7,500,000 contract at the golf course and catering hall The Woodlands; (b) Tobay Beach restaurant contract for $1,500,000; (c) Tease restaurant in Port Washington for $450,000; (d) Tom Tom restaurant in Wantagh for $275,000; (e) Waters Edge restaurant for $500,000; (f) and various other restaurants for $1,500,000. (See Hauk Aff., ¶ 5)

19. Mr. Hauk states in his Affidavit that his experience in servicing multi-million dollar contracting jobs for numerous wealthy commercial clients permitted me to develop a knowledge in understanding improvements and fixtures as affecting the value of commercial properties. (See Hauk Aff., ¶ 6)

20. In regard to the contracting work done at the Premises and H.R. Singleton's, Mr. Hauk through his companies (who also paid many sub-contractors) was paid the corresponding amounts in building and affixing the following improvements and fixtures: (a) $2,200,000 to build out a 3,000 square foot room to the Restaurant which increased the seating capacity from 90 to 458 seats; (b) $120,000 to improve and increase the size of the parking lot of the shopping center and restaurant; (c) $220,000 to install and permanently affix ten 110 Ton A/C units; (d) $200,000 for a forty-foot extravagant bar and splash area; (e) interior improvements all around the restaurant which became permanent fixtures at an estimated cost of $250,000; (f) installed a four hood system in the kitchen that has a market value of $120,000; (g) installed numerous kitchen fixtures, equipment, and machinery built into the restaurant at a cost of almost $500,000, including but not limited, salad stations, specialized refrigerators, wine storage and cellar, beer rotating systems, and other specialty furniture and fixtures for one of the top steak restaurants in Long Island; (h) installed signs on the inside and outside of the restaurant and Premises, including many fancy electric signs, which cost about $100,000 for the labor and parts combined; (i) built a state of the art music and entertainment system that cost $25,000 for the supplies and labor together; (j) bathroom fixtures at a cost of about $90,000; (k) installed four commercial washer/dryer and ironing machines at the restaurant for a total of about $100,000 in labor and machine cost. (See Hauk Aff., ¶ 8 -18)

21. Mr. Hauk also states that removal of any the above-mentioned improvements and fixtures would cause, substantial, material, and structural damage to the Premises, thereby dramatically decreasing the overall value of the property. (See Hauk Aff., ¶ 19)

## FIXTURES UNDER NEW YORK STATE LAW

22. A fixture is defined as any article of personal property which has become so affixed to the land that it becomes part of it, or has become so related to particular real estate that an interest in it arises under the real estate law. U.C.C. § 9-313(1)(a).

23. By "fixture" the court means "any article of personal property which has become so affixed to the land that it becomes part of it." *2401 Walnut, L.P. v. American Express Travel Related Services Company, Inc.* 2011 U.S. Dist. LEXIS 12325 (E.D. Pa., March 7, 2011) citing *J.K.S.P Restaurant, Inc. v. Nassau Cnty.,* 127 A.D.2d 121, 130, 513 N.Y.S.2d 716 (N.Y. App. Div. 1987). As this court has previously noted, this is a fact-specific inquiry. "[T]he test to be applied to determine whether goods are fixtures requires (1) the actual attachment of the goods to the real estate, (2) the adaptability of the goods to the use for which the real estate is appropriated, and (3) the intent that the annexation be permanent." *Norstar Leasing Servs., Inc. v. Colonie Coliseum Enters., Inc.*, 145 Misc. 2d 388, 546 N.Y.S.2d 942, 944 (N.Y. Sup. Ct. 1989).

24. In order to establish the first element, actual attachment to the real estate, the evidence in the record must be sufficient for a fact-finder to conclude that the items at issue were physically attached or "constructively annexed" to the property. 1 N.Y. Law & Practice of Real Property § 1:13 (2d ed. & Supp. 2010).

25. For this first element, Mr. Hauk states in his Affirmation that the fixtures and improvements his companies installed were affixed it to the Premises, such that removal of any these improvements and fixtures would substantially decrease the value of the real estate.

26. In order to establish the second element, adaptability to the use for which the real estate is appropriated, the evidence of record must be sufficient for a fact-finder to conclude that the items were both fit for the particular purpose of the real property and necessary for complete use of the real property. *Id.* § 1:13. In evaluating this requirement, the court considers whether the goods were installed for the purpose of improving the property. "Generally, if the article is annexed to the realty to be applied and appropriated to the use of the realty, with a view to the permanent improvement or beneficial enjoyment thereof, it will be held to be a fixture." 1 N.Y. Law & Practice of Real Property § 1:15 (2d ed.); *see 41 Fifth Owners Corp. v. 41 Fifth Equities Corp.,* 14 A.D.3d 386, 787 N.Y.S.2d 326 (N.Y. App. Div. 1st Dep't 2005).

27. In regard to the second element, the fixtures built into the Premises and restaurant that are described in Paragraph 19 of this Affirmation all contributed to the permanent improvement and beneficial enjoyment of the property.

28. Finally, in order to establish the third element, intent that annexation be permanent, the evidence needs to be sufficient to allow the finder of fact to "infer[] from the *nature* of the article affixed, the *relation* and *situation of the party* making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made" that the party making the annexation intended "to make the article a permanent accession to the" real property. *Id.* § 1:13 n.55. In arriving at this conclusion, the court places much weight on the fact that the items were installed by the Building's onetime owner for the benefit of the property. *2401 Walnut, L.P. v. American Express Travel Related Services Company, Inc.* 2011 U.S. Dist. LEXIS 12325 (E.D. Pa., Jan. 23, 2008) *See* 59 N.Y. Jur.2d § 25 ("The law presumes that since the ownership interest of the vendor of real estate has been permanent, when he or she annexes chattels thereto it is with the view to a lasting enjoyment of the estate and for its continued enhancement in value."); *cf. Marine*

*Midland Trust Co. of Binghamton v. Ahern,* 16 N.Y.S.2d 656, 660 (N.Y. Sup. Ct. Broome County 1933) (holding that fact of annexation by owner, "while not conclusive" of intent, is "entitled to considerable weight").

29.     In regard to the third element, all the fixtures and improvements described in Paragraph 19 of this Affirmation substantially increase the value of the premises such that removal of these fixtures and improvements would significantly decrease the fair market value of the premises, thus, affecting the "possession, use, or enjoyment of real property." C.P.L.R. §6501. Moreover, the owner of the Premises is permitted to command a higher rent for the restaurant at the Premises because of these fixtures and improvements.

30.     The fixtures and improvements stated in Paragraph 19 of this Affirmation are the subject of Plaintiff's Notice of Pendency, and not the interest in the personal property at the Premises in which Plaintiff alleges as a separate cause of action from the notice of pendency.

### REASONS THE PLAINTIFF DID NOT ASSERT ITS SECURED INTERESTS IN THE BANKRUPTCY PROCEEDING

31.     Defendant alleges that it should be awarded sanctions, including costs and expenses, because Plaintiff did not assert its lien interests in the Bankruptcy Proceeding and filed its claim against Defendant almost a year after Defendant's purchase of the premises.

32.     Plaintiff's President and sole shareholder Harminderjit Dhillon ("Mr. Dhillon") submits an Affidavit in support of this Affirmation in Opposition to fully explain to the Court the reasons for Merchant not asserting its claims in Bankruptcy Court and for filing its Complaint ten months after Defendant purchased the Premises. (The Affidavit of Harminderjit Dhillon ("Mr. Dhillon" or "Dhillon Aff."), is annexed to this Affirmation in Opposition and incorporated by reference.)

33. On or about June 30, 2017, Merchant bought the rights through assignment to a loan, note and security agreements from the company AC 12 LLC. Through the execution of assignment documents and subsequent U.C.C. 3 filings with the NYS Department of State, Merchant became first priority lien holder of, *inter alia*, the machinery, equipment, inventory, furniture, fixtures, goods, and improvements (the "Property") existing at the restaurant H.R. Singleton's which formerly operated at the premises located at 4019-4021 Hempstead Turnpike, Bethpage, NY 11714 (the "Premises"). (See Dhillon Aff., ¶ 3; Ex. C, UCC Filings; and Ex. E, AC12 LLC to Merchant Assignment Documents).

34. In or about August 2017, the owner for an entity by the name of Bethpage Bistro and Catering LLC ("BBC") told Mr. Dhillon they were trying to sign a lease with Sun Property Consultants Inc. (landlord in Chapter 11 bankruptcy) to take over and operate the restaurant H.R. Singleton's and would pay Merchant for the Property presently existing in the restaurant if this lease was approved by the Bankruptcy Trustee Yann Geron (the "Bankruptcy Trustee"). (See Dhillon Aff., ¶ 5).

35. Mr. Dhillon thought it would be better to get a payment from any tenant who takes over the restaurant as opposed to seizing everything and trying to re-sell used equipment which may or may not provide adequate compensation. (See Dhillon Aff., ¶ 6).

36. The Bankruptcy Trustee did not approve the lease with BBC and started advertising the restaurant for another tenant to take over and operate. After he was not able to find another tenant, the Bankruptcy Trustee petitioned the court to convert the case to a Chapter 7 which was approved by the Bankruptcy Court.

37. In November 2018, the Bankruptcy Trustee conducted a bankruptcy court auction of the Premises which was bought by the company Valentine Mark Corporation ("VMC") who signed

a Purchase and Sale Agreement with the Bankruptcy Trustee. VMC eventually assigned its right to the purchase to an entity called 4021 Hempstead Turnpike LLC ("4021 HTL"). (The Purchase and Sale Agreement and Assignment to 4021 HTL are annexed hereto as Exhibit J and K, respectively.)

38. The attorney for 4021 HTL contacted Mr. Dhillon and told him that his clients would like to keep the Property in the restaurant in order to rent to a new tenant and will pay Merchant for this right to keep the Property. (See Dhillon Aff., ¶ 9).

39. 4021 HTL eventually could obtain financing to purchase the Premises, thus, the Bankruptcy Trustee called the second highest bidder at the auction who was the Defendant Difficile Realty Corp., who then eventually bought the Premises.

40. The attorney for 4021 HTL told Mr. Dhillon he was speaking with Difficile's attorney to buy the Premises back from them and these negotiations went on for quite some time before Difficile's attorney finally stopped communicating with 4021 HTL. (See Dhillon Aff., ¶ 11).

41. Mr. Dhillon tried to negotiate with Difficile's attorney to work out an agreement with them to either pay Merchant for the Property or allow access to enter the Premises to take out the Property which lawfully belonged to Merchant pursuant to a first priority secured lien interest. (See Dhillon Aff., ¶ 12).

42. Difficile did not agree to pay Merchant for the Property or provide them access to the Premises to take out the Property, thus, leading to the Nassau County Supreme Court lawsuit. (See Dhillon Aff., ¶ 13).

43. Difficile eventually removed all of Merchant's Property and sold it to third party buyers without providing Merchant any compensation. (See Dhillon Aff., ¶ 14).

## DEFENDANT SHOULD NOT BE AWARDED SANCTIONS

44. Defendant alleges that it should be awarded sanctions, including costs and expenses, because Plaintiff did not assert its lien interests in the Bankruptcy Proceeding, filed its claim against Defendant months after the sale of the Premises to Defendant, and because Plaintiff failed to demonstrate any documented security interest aside from expired U.C.C.-1 and U.C.C.- 3 Financing Statements.

45. Defendant should not be awarded sanctions for Plaintiff not asserting its lien interest in the Bankruptcy Proceeding and for filing a claim some time after Defendant purchased the premises. The long history of events describing all the reasons Plaintiff did not or need to assert its interest are detailed in the Affidavit of Harminderjit Dhillon, President of Merchant Acquisitions Corp. a/k/a Plaintiff which is annexed to this Affirmation and incorporated by reference.

46. In regard to valid proof of a documented security interest, Plaintiff is not required to submit any documents evidencing its security interest to its Complaint to substantiate its allegations (although Plaintiff did annex its U.C.C. 1 and 3 filings to the Complaint) and filed UCC-1 and 3 financings statements with the NYS Department of State on its face evidence the validity of Plaintiff's secured interest. (See Ex. C, U.C.C. 1 and 3 filings)

47. Moreover, the UCC financing statements were valid and unexpired at the time the Defendant bought the Premises in February 2019, thus Defendant was on public notice that the Property in the Premises did not belong to the Debtor Sun Property. These UCC filings expired a month before Plaintiff filed its Complaint, however, there was not a need to continue them because by the time the Plaintiff filed its Complaint, the Property was already removed and sold by the Defendant to third parties.

48. Finally, your Honor, Defendant's counsel has not even once asked your affiant for any documents to verify the validity of Plaintiff's claim or offered any money in settlement. In fact, my client informed me that Difficile's principals only sold the Property after confirming with their present counsel that they were permitted to do so. Defendant counsel has stated to your affiant on more than one occasion that his client will offer zero dollars in settlement because Plaintiff's claim has no basis in law or fact.

49. In fact, your Honor, Defendant's counsel has done the complete opposite in trying to resolve this matter between the parties. In the hopes of my retreating or withdrawing as counsel and in intimidation, he has threatened me and my client with sanctions on multiple occasions, including FRCP 11 and FRBP 7011 motions.

50. In fact, Plaintiff should be awarded sanctions because Defendant's counsel is acting in bad faith in defending this action by threatening serious penalties against me and my client when the evidence is clear that Plaintiff has a claim based in law and fact. These threats of sanctions motions are clearly unfounded and a legal strategy I believe based on increasing his client's legal bills in lieu of a fair and reasonable settlement and dismissal of all claims.

WHEREFORE, for the foregoing reasons, as well as those set forth in the affidavits and exhibits annexed hereto, which are expressly incorporated herein, Plaintiff respectfully requests that this Court deny Defendant's motion in all respects.

Dated: East Meadow, NY
      May 27, 2020

LAW OFFICE OF TEJAL SHAH, P.C.
Attorney for Plaintiff Merchant Acquisitions Inc.

_____
Tejal Shah, Esq.
*Attorneys for Plaintiff*
2545 Hempstead Tpke., Suite 403
East Meadow, NY 11554
T:  917-612-7599/F: 646-606-3278
tejal@tejalshahlaw.com/tejalshahlaw@gmail.com