UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------x

In re:

Sun Property Consultants, Inc.,

                   Debtor.

----------------------------------------------------------x

Merchant Acquisitions, Inc.,

                   Plaintiff,

       v.

Difficile Realty Corp.,

                   Defendant.

----------------------------------------------------------x

Case No.: 8-16-72267-las

Chapter 7

Adv. Pro. No.: 8-20-08057-las

### MEMORANDUM DECISION AND ORDER GRANTING
### DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Before the Court is defendant's motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), made applicable here by Bankruptcy Rule 7012, to dismiss plaintiff's amended complaint ("Amended Complaint")[1] for failure to state a claim. [Dkt. No. 35]. Plaintiff opposed the motion [Dkt. Nos. 42, 43, 46, 49, 50], and defendant filed a reply. [Dkt. No. 41]. The Court heard oral argument on October 8, 2020.

The Court has carefully considered the parties' submissions and arguments. For the following reasons, defendant's motion to dismiss is granted. The Amended Complaint is dismissed in its entirety.

The Court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of

---

[1] The Amended Complaint was filed in the Supreme Court of the State of New York, County of Nassau, Index No. 615796/2019 on December 26, 2019. The action was removed to this Court by defendant on April 1, 2020 [Dkt. No. 1].

New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012.

BACKGROUND[2]

A.  The Bankruptcy Case of Sun Property Consultants, Inc.

On May 23, 2016, Sun Property Consultants, Inc. ("Debtor") filed a petition for relief under chapter 11 of the Bankruptcy Code. At the time of the bankruptcy filing, Debtor owned and operated a strip shopping center located at 4019-4021 Hempstead Turnpike, Bethpage, New York 11714 and 150-166 Hicksville Road, Bethpage, New York 11714 (the "Premises"). In Schedule G (Executory Contracts and Unexpired Leases) to its bankruptcy petition, the Debtor disclosed that, as landlord, it was a party to five unexpired leases with the following tenants at the Premises: Brothers Three Inc., Northshore Community Services, Inc., W.B. Restaurant Inc., Watawa Japanese Cuisine Inc., and Xu Lei. [Bankr. Case No. 16-72267, Dkt. No. 28][3]. The vacant tenant space formerly occupied by a restaurant known as Singletons, which was operated by Raj & Raj Realty, Ltd. ("Raj & Raj"), was the subject of concerted effort by the Debtor and, subsequently, Yann Geron, Esq., the chapter 11 trustee appointed in the Debtor's chapter 11 case, to find a new tenant. Neither Raj & Raj nor Singleton's was listed in the Debtor's Schedule G as a party to an unexpired lease with the Debtor. According to the Debtor's Disclosure Statement, Singleton's ceased operations in December of 2016. [Bankr. Dkt. No. 155]. By motion dated August 23, 2017, the Debtor sought authority from

---

[2] In this section, the Court first recounts the procedural history of the bankruptcy case commenced by the debtor as necessary to familiarize the reader with defendant's acquisition of the Premises pursuant to a bankruptcy sale approved by the Court. Next, the Court relates the facts as alleged by plaintiff. The facts stated are taken from the Amended Complaint, unless otherwise noted, and are assumed to be true for purposes of the motion. In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "accept[s] as true the facts alleged in the Complaint, drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). References to the allegations in the Amended Complaint should not be construed as a finding of fact by the Court, and the Court makes no such findings.

[3] Unless otherwise stated, all docket references to the Debtor's bankruptcy case, Case No. 8-16-72267-las, are cited as "[Bankr. Dkt. No. __]".

this Court to sign a lease with Bethpage Bistro & Catering, LLC ("Bethpage Bistro") for the tenant space formerly occupied by Singleton's ("Lease Motion"). [Bankr. Dkt. No. 183]. Prior to filing the Lease Motion, during the months February 2017 to June 2017, the Debtor made payments to Bethpage Bistro claiming that Bethpage Bistro had arrangements with several third parties, including vendors, to provide services, such as garbage removal, extermination, and snow removal, for the Premises even though Bethpage Bistro was not a tenant. [Bankr. Dkt. No. 201]. No authority was sought by the Debtor to make any post-petition payments to Bethpage Bistro. The Lease Motion was withdrawn at a hearing before the Court on January 25, 2018.

On motion of the chapter 11 trustee [Bankr. Dkt. No. 301], the Debtor's chapter 11 case was converted to a case under chapter 7 of the Bankruptcy Code on October 3, 2018, [Bankr. Dkt. No. 313], and Mr. Geron was appointed chapter 7 trustee [Bankr. Dkt. No. 315].

By Order dated February 1, 2019, the Court approved the sale of the Premises by the chapter 7 trustee to REMM Consultants, Inc. ("REMM") or any designee of REMM. [Bankr. Dkt. No. 373]. The sale, pursuant to § 363, was "in 'as is' and 'where is' condition and free and clear of all liens, claims and encumbrances, including any purported easements, other than Permitted Exceptions (as defined in the Sale Agreement), with any such liens, claims and encumbrances, including any purported easements, to attach to the proceeds of the Sale of the Property." The trustee and REMM entered into a Purchase and Sale Agreement for the Premises which included a Rider that defined the "Property" sold as including not just the land and buildings, improvements, and structures located on the land, but also "the fixtures, equipment and other personal property attached or appurtenant to the [i]mprovements, to the extent the same belong to the [s]eller."

On February 5, 2019, the chapter 7 trustee conveyed the bankruptcy estate's right, title and interest in the "Property," including the Premises, to defendant as REMM's designee pursuant to a Bargain and Sale Deed without Covenants.

### B. The Adversary Proceeding

### 1. Overview

Plaintiff commenced this action on November 12, 2019 by filing its original complaint in the Supreme Court of the State of New York, County of Nassau, Index No. 615796/2019 ("State Court Action") against defendant alleging that defendant converted personal property at the Premises in which plaintiff claimed to have a properly perfected security interest. The complaint asserted two causes of action for conversion. The first cause of action sought money damages in the amount of $5,197,000 and the second cause of action sought money damages in the amount of $525,000.

On December 26, 2019, plaintiff filed the Amended Complaint in the State Court Action. The Amended Complaint is identical to the original complaint except that plaintiff asserts a third cause of action claiming it is entitled to file a notice of pendency on the Premises. The third cause of action sounds in conversion and seeks money damages in the amount of $5,197,000. On December 27, 2019 plaintiff filed a notice of pendency on the Premises.

As discussed further below, plaintiff's action was removed to the District Court by defendant on January 28, 2020, and the District Court referred the action to this Court, pursuant to 28 U.S.C. § 157(a), by Order dated March 31, 2020. Defendant subsequently moved to cancel the notice of pendency and by Order of this Court dated June 10, 2020 [Dkt. No. 26] the notice of pendency was cancelled. By separate Order, dated August 24, 2020, this Court granted defendant's request for an award of attorneys' fees and expenses incurred by the filing and cancellation of the notice of pendency. [Dkt. No. 47].

4

2.  The Allegations in the Amended Complaint

Plaintiff alleges, upon information and belief,[4] that a former commercial tenant at the Premises, Raj & Raj, made substantial improvements ("Improvements") to the Premises in excess of $4.2 million and financed the acquisition of certain machinery and equipment used to operate a restaurant at the Premises ("Equipment") with plaintiff's predecessor in interest, AC 12 LLC ("AC 12"). According to plaintiff, AC 12 assigned to plaintiff its right, title and interest in and to the Equipment, including its duly perfected secured lien.[5] Am. Compl. ¶ 4. Plaintiff attaches a list of the Equipment and Improvements as Exhibits A and B to the Amended Complaint. Included in Exhibit A to the Amended Complaint is a letter, dated January 31, 2019, from Harvey J. Cavayero, Esq. to Mr. Geron as chapter 7 trustee ("January 2019 Cavayero Letter"). The January 2019 Cavayero Letter states that:

> Pursuant to our discussion in Bankruptcy Judge Scarcella's courtroom of this afternoon, regarding the restaurant furniture, fixtures and equipment, and inventory identified on the annexed schedule hereto ("collectively, the Inventory") presently on the Debtor's premises located at 4021 Hempstead Turnpike, Bethpage, New York, this will confirm that neither the Trustee, Debtor's estate or the secured creditor, McCormick 103 LLC have any right title or interest in into the Inventory.
>
> This will further confirm that [Trustee] will give reasonable access to the owner of the Inventory, Bethpage Bistro and Catering LLC ("BBC") and/or its authorized agents and assigns reasonable access to the Debtor's premises for the purpose of allowing them to inspect the Inventory, and if needed, to make arrangements with your managing agent for the removal of the same.

---

[4] There are several allegations in the Amended Complaint where plaintiff pleads facts alleged upon information and belief. Pleading facts upon information and belief is permitted "where the facts are peculiarly within the possession and control of the defendant." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Plaintiff does not claim that the facts plead upon information and belief are within defendant's exclusive possession and control.

[5] Pursuant to documents attached to plaintiff's opposition to the motion to dismiss, the alleged assignment from AC 12 to plaintiff occurred in June 2017. As noted below, a UCC-3 Assignment was filed in August 2019, more than two years after the alleged assignment, and the UCC financing statement lapsed in October 2019 as plaintiff did not file a continuation statement.

> Accordingly, please provide me with the name, phone number and email address of the person to contact at the managing agent to schedule the inspection.

Am. Compl. Ex. A. Copied on the January 2019 Cavayero Letter are counsel for McCormick 103 LLC, the holder of a mortgage on the Premises, and Sardar M. Asadullah, Esq., who filed the original complaint against the defendant in the State Court Action on behalf of plaintiff.

Plaintiff alleges that it has a first priority lien and security interest in the Equipment and the Improvements pursuant to Uniform Commercial Code-3 Amendment, Assignment and Continuation statements attached to the Amended Complaint. Am. Compl. ¶ 5. Those UCC filings, as set forth in reverse chronological order, consist of: (1) a one page Filing Data Report from the New York State Department of Statement printed on August 19, 2019, (2) a one page UCC-3 Financing Amendment filed on August 19, 2019 showing an assignment from AC 12 to plaintiff (Filing No. 201908198373685), (3) a one page UCC-3 Financing Statement Amendment filed on December 11, 2015 showing an assignment from Sovereign Bank to AC 12 (Filing No. 201512110639030), and (4) a one page UCC-3 Financing Statement Amendment filed on August 21, 2014 filed by Santander Bank, N.A. f/n/a Sovereign Bank, N.A. (Filing No. 20148215893398), which is a continuation statement seeking to continue the effectiveness of a prior Financing Statement dated October 30, 2009 filed by Sovereign Bank (Filing No. 2009103000624640). The October 30, 2009 Financing Statement has an Option Filer Reference Data note of "CL10384 Oct2009 financing-Quinn Rest Gty".

Also attached to the Amended Complaint is a second set of UCC filings relating to Raj & Raj. Again, in reverse chronological order, these UCC statements consist of: (1) a one page Filing Data Report as of August 6, 2019; (2) UCC Financing Statement Amendment dated August 19, 2019 noting an assignment from AC 12 to Merchant Acquisitions, Inc. (Filing No. 201908198373712); (3) UCC Financing Statement Amendment filed on December 10, 2015 noting an assignment from Sovereign Bank to AC 12 (Filing No. 201512100636727); and (4)

UCC Continuation Financing Statement Amendment filed on August 21, 2014 (Filing No. 201408215893374) by Santander Bank, N.A. f/n/a Sovereign Bank, N.A.; and (5) original UCC Financing Statement filed on Oct. 30, 2009 by Sovereign Bank (Filing No. 200910300624638).

Plaintiff alleges that the Equipment in which it asserts a lien is worth approximately $997,000.00 pursuant to an appraisal annexed to the Amended Complaint. Am. Compl. ¶ 6. That appraisal, by Sencer Appraisal Associates dated March 16, 2016, has a subject line of "Re: "BETHPAGE BISTRO" RESTAURANT – 150 Hicksville Road, Bethpage, NY 11714". The Sencer Appraisal lists a total fair market value for the furniture and equipment at the Premises of $575,789.00. Am. Compl. Ex. D.

Plaintiff alleges that AC 12 obtained and assigned to plaintiff an Order of Seizure of Chattel dated March 30, 2017, as amended by an Order dated May 25, 2017 ("Amended Order of Seizure") entered by the Supreme Court of the State of New York, County of Nassau. Am. Compl. ¶ 6, Ex. E. The Amended Order of Seizure required AC 12 to obtain an undertaking in the amount of $20,000 and directed the Sheriff of Nassau County, the Sheriff of Queens County, or the sheriff of any county where the chattel is found, to break open, enter, search and seize any chattel described in section 2 of security agreements dated Oct. 7, 2009 between AC 12's predecessor in interest and the various defendants, which includes Raj & Raj. The Amended Complaint does not allege that any action was taken by plaintiff to enforce the Amended Order of Seizure and take possession of any property. This, despite plaintiff having allegedly acquired its interest in the personal property at issue in June 2017, more than two years prior to the filing of the original complaint by plaintiff against defendant in the State Court Action.

Plaintiff further alleges that "[o]n Jan. 31, 2019, the attorney for one of the other prospective purchasers confirmed with the Chapter 7 Trustee there were (sic) a substantial

7

amount of restaurant furniture, fixtures and Equipment and inventory at the Premises that was not owned by and did not belong to [the Debtor]. Neither the Trustee nor the bankruptcy estate of [the Debtor] expressed any interest in acquiring title or possession of the personal property and Equipment." Am. Compl. ¶ 15. In support of this allegation, plaintiff attaches as Exhibit G the same January 2019 Cavayero Letter that was in Exhibit A which states that the personal property identified in the letter and located at the Premises is owned by Bethpage Bistro. Plaintiff alleges that notwithstanding the "Equipment" was excluded from the sale as it was not property of the Debtor, defendant converted and sold the Equipment without prior notice and approval of plaintiff. Am. Compl. ¶ 15. According to plaintiff, "the Equipment was upon information and belief, sold, removed and transported by [d]efendant, without prior notice to or consent of the [p]laintiff, to a third party, where it was unlawfully converted, detained and upon information and belief, resold." Am. Compl. ¶ 16.

    3.    Causes of Action

    As noted above, plaintiff brings three causes of action against defendant. The first, for conversion, seeks money damages of $5,197,000. Plaintiff claims that (i) on or about July 1, 2019, defendant converted, sold and/or conveyed the Equipment and Improvements, (ii) upon learning of the alleged unlawful conversion and sale, plaintiff made immediate demand upon defendant for the return of the Equipment and Improvements and/or the proceeds of sale, asserting the Equipment and Improvements are subject to plaintiff's duly perfected lien and security interest, and (iii) defendant has failed to turn over the property or any proceeds. Am. Compl. ¶ 17-19. No documents are attached to the Amended Complaint in support of any written demand by plaintiff, nor is there any allegation specifying that an oral demand was made on the defendant for the return of the subject property.

    In the second cause of action arising out of defendant's alleged conversion, plaintiff asserts that the third-party purchaser of the Equipment, Inventory (which is not defined in

the Amended Complaint) and Improvements from the defendant is not a *bona fide* purchaser, as the term is defined in the Uniform Commercial Code, because defendant was on notice of plaintiff's secured interest and lien in the Equipment, Inventory and Improvements and the proceeds thereof by reason of plaintiff's duly recorded UCC-3 Statements. Plaintiff claims that defendant, without plaintiff's knowledge or consent, sold the Equipment, Inventory and Improvements to an unidentified third party thereby converting this property for its own benefit and use. Plaintiff claims that defendant is liable to it for the value of the Equipment, Inventory and Improvements and the proceeds realized upon the sale. Am. Compl. ¶ 23-25. On this cause of action for conversion, plaintiff seeks money damages of $525,000.

Finally, in the third cause of action, which sounds in conversion, plaintiff seeks money damages in the amount of $5,197,000. Plaintiff alleges that the Improvements made by Raj & Raj are affixed to the Premises rendering them a part of the real property that defendant took subject to upon its purchase of the Premises. Am. Compl. ¶ 28. Plaintiff claims that the Improvements were affixed to the Premises from the inception of the financing agreement between plaintiff's predecessor in interest AC 12 and Raj & Raj. Am. Compl. ¶ 29. No financing agreement between AC 12 and Raj & Raj is attached to the Amended Complaint and there is no allegation in the Amended Complaint as to when the financing agreement was signed by the parties.

Plaintiff alleges that the Improvements affect the title to, or the possession, use or enjoyment of the real property by defendant, thereby preventing defendant from selling, mortgaging, or encumbering the Premises. Plaintiff further alleges that it is entitled to file a notice of pendency because the Improvements cannot be removed from the Premises and thus affect defendant's possession, use or enjoyment of the Premises. Am. Compl. ¶ 31. On December 27, 2019, one day after filing its Amended Complaint in the State Court Action, plaintiff filed a notice of pendency against the Premises. Am. Compl. Ex. 3.

4.  Removal of State Court Action and Cancellation of Notice of Pendency

On January 28, 2020, defendant removed the State Court Action to the District Court which then referred the matter to this Court by order dated March 31, 2020. After removal of the action to this Court, on May 20, 2020, defendant moved to cancel the notice of pendency and for an award of costs and fees under § 6514(b) and (c) of Article 65 of the N.Y. Civil Practice Law and Rules. After extensive hearings, and for the reasons set forth on the record, the Court determined that the relief sought by plaintiff in the underlying action is unrelated to, and does not directly affect, the title, possession, use or enjoyment of the Premises, and that the unique provisional remedy that permits a plaintiff, in a narrow set of circumstances, to file a notice of pendency to restrict the alienation of real property is not permitted in an action for money damages. Having found plaintiff's filing of the notice of pendency to be a misuse of Article 65 of the N.Y. Civil Practice Law and Rules ("N.Y. C.P.L.R."), the Court entered an order on June 10, 2020 [Dkt. No. 26] cancelling the notice of pendency against the Premises pursuant to N.Y. C.P.L.R. § 6514(b). On August 24, 2020, the Court entered a separate order granting defendant's request, pursuant to N.Y. C.P.L.R. § 6514(c), for costs and expenses occasioned by the filing and cancellation of the notice of pendency. [Dkt. No. 47].[6] The Court awarded defendant $21,906.50 in attorneys' fees and $202.74 in expenses and directed that plaintiff pay these amounts within 14 days of entry of the Order. *Id.*[7]

C.  The Motion to Dismiss

While its motion to cancel the notice of pendency was pending, defendant filed the current motion to dismiss plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6)

---

[6] Defendant has moved for an award of additional damages it claims were occasioned by the filing and cancellation of the notice of pendency. [Dkt. No. 53]. Plaintiff replied. [Dkt. No. 57]. The Court heard oral argument on October 8, 2020.

[7] According to defendant, no portion of the fees and expenses awarded pursuant to the August 24, 2020 Order have been paid by plaintiff.

for failure to state a claim. In support of the motion, defendant asserts five grounds for dismissal: (1) plaintiff and AC 12 knew of the Debtor's bankruptcy case and failed to assert any security interest in the personal property at issue during the bankruptcy proceeding and prior to the sale of the Premises to defendant; (2) plaintiff failed to sufficiently allege that it holds a valid, perfected security interest in any assets of Raj & Raj as the documents attached to the Amended Complaint do not establish that AC 12 assigned a security interest in any of the assets of Raj & Raj to plaintiff; (3) the UCC-1 financing statements attached to the Amended Complaint expired by their own terms on October 30, 2019, a date prior to the commencement of the State Court Action and is deemed, pursuant to N.Y. U.C.C. § 9-515, to never have been perfected as against a purchaser of the collateral for value; (4) plaintiff's claims are precluded under the doctrines of equitable estoppel and judicial estoppel because plaintiff and AC 12 failed to assert a security interest in the personal property during the Debtor's bankruptcy case despite (i) having notice of the bankruptcy case and (ii) submission of two separate documents by Bethpage Bistro's counsel claiming that Bethpage Bistro is the owner of the personal property in Raj & Raj's tenant space at the Premises; and (5) plaintiff waived its rights to the personal property having failed to enforce the Order of Seizure, as amended, and having permitted the perfection of its alleged lien to lapse.

In opposing the motion to dismiss, plaintiff argues that it has a security interest in the personal property at the Premises through executed assignment agreements with AC 12, which included two Allonges, two Assignment of Leases and Rents, Assignment of Cause of Action, Assignment of Gap Leasehold Mortgage and Security Agreement, and Assignment of Consolidation, Extension, and Modification Agreement. These alleged assignment documents were neither mentioned in the Amended Complaint nor attached as exhibits to the Amended Complaint. Rather, they were submitted by plaintiff in opposition to defendant's motion to dismiss. Contrary to the allegations in the Amended Complaint, the documents do not show

that AC 12 financed Raj & Raj's acquisition of the personal property at issue. Instead, Raj & Raj's owner, Harendra Singh, executed a corporate guaranty and security agreement dated Oct. 27, 2009 on behalf of Raj & Raj in favor of Sovereign Bank as collateral security for obligations under a mortgage note given by Quinn Restaurant Corporation ("Quinn Restaurant"), another entity owned by Singh, to Sovereign Bank. Each of these assignment documents relied upon by plaintiff to establish its claim that it holds a lien and security interest in personal property pertains to a mortgage financing transaction between Quinn Restaurant and Sovereign Bank. The guaranty and security agreement, purportedly signed by Raj & Raj, are neither referenced in nor attached to the Amended Complaint.

In opposing defendant's motion to dismiss, plaintiff also filed two affidavits, neither of which is referenced in nor attached to the Amended Complaint. The first is an affidavit, dated May 27, 2020 of Harminderjit Dhillon, plaintiff's President and sole shareholder. In his affidavit, Mr. Dhillon states that plaintiff acquired rights in the personal property by an assignment of a loan, note and security agreement from AC 12 on or about June 30, 2017. The alleged assignment documents are not attached to the affidavit. Additionally, in his affidavit, Mr. Dhillon states why, despite having knowledge of the Debtor's bankruptcy case, plaintiff did not appear in the bankruptcy case to assert any of its purported rights. [Dkt. No. 46-2]. The second is an affidavit of Mr. Cavayero, dated November 7, 2019. [Dkt. No. 46-3]. The affidavit of Mr. Cavayero was submitted by him in a separate adversary proceeding pending before this Court filed by Raj & Raj against defendant, Adv. Pro. No. 8-19-08064-las ("Raj & Raj Proceeding"). In that action, Raj & Raj seeks money damages against defendant for conversion claiming that it owns the personal property at the Premises. The affidavit of Mr. Cavayero was filed on behalf of Raj & Raj in opposition to defendant's motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Raj & Raj amended complaint for failure to state a claim. In his affidavit of November 7, 2019, Mr. Cavayero contradicts his prior submission to

the Court, i.e. the January 2019 Cavayero Letter, where he stated that Bethpage Bistro was the owner of the subject personal property. As noted above, plaintiff attached the January 19 Cavayero Letter as an exhibit to the Amended Complaint.

Finally, plaintiff argues that the UCC financing statements attached to the Amended Complaint were in effect when defendant purchased the Premises at the bankruptcy sale in February 2019 as the lapse in perfection did not occur until October 2019. Plaintiff contends that there was no need for it to continue perfection of its security interest in the subject personal property by filing a continuation statement because at the time plaintiff commenced the State Court Action, defendant had already removed and sold the personal property.

## DISCUSSION

### A.  Rule 12(b)(6) Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a)(2)[8]; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To meet this standard, a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id*. The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility

---

[8] Fed. R. Civ. P. 8 is made applicable to adversary proceedings pursuant to Bankruptcy Rule 7008.

of the complaint; not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (internal citation and quotation mark omitted). Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Although on a motion to dismiss all well-pleaded factual allegations in the complaint are assumed true, this principle is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Moreover, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-6 (S.D.N.Y. 2001). *See also Evans v. Select Portfolio Servicing, Inc.*, No. 18-CV-5985 (PKC) (SMG), 2020 WL 5848619, at *4 (E.D.N.Y. Sept. 30, 2020).

B. Conversion

All of plaintiff's causes of action seek money damages for conversion under New York law. "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (2006). "'Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights.'" *Pappas v. Tzolis*, 20 N.Y.3d 228, 234, 958 N.Y.S.2d 656, 982 N.E.2d 576 (2012) (*quoting Colavito*, 8 N.Y.3d at 50).

"Where the defendant obtained possession of the property lawfully, a conversion claim accrues only after the plaintiff's demand for the property is refused by the defendant." *Haraden Motorcar Corp. v. Bonarrigo*, 1:19-cv-01079 (BKS/DJS), 2020 WL 1915125, at \*10 (N.D.N.Y. Apr. 20, 2020) (*citing Leveraged Leasing Admin. Corp. v Pacific Corp. Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996)). *See also White v. City of Mount Vernon*, 221 A.D.2d 345, 346 (N.Y. App. Div. 1995) (noting that "[i]f possession of the property is originally lawful, a conversion occurs when the defendant refuses to return the property after a demand or sooner disposes of the property."); *Republic of Turkey v. Christie's Inc.*, 425 F. Supp. 3d 204, 212 (S.D.N.Y. 2019). "[O]ne in lawful possession shall not have such possession changed into an unlawful one until he 'be informed of the defect of his title and have an opportunity to deliver the property to the true owner ....'" *Leveraged Leasing Admin. Corp.*, 87 F.3d at 49 (*quoting Employers' Fire Ins. Co. v. Cotton*, 245 N.Y. 102, 106 (1927)). In addition, "[w]here one is rightfully in possession of property, one's continued custody of the property and refusal to deliver it on demand of the owner until the owner proves his [or her] right to it does not constitute conversion." *Green Complex, Inc. v. Smith*, 107 A.D.3d 846, 849 (N.Y. App. Div. 2013) (*quoting Trans-World Trading, Ltd. v. North Shore Univ. Hosp. at Plainview,* 64 A.D.3d 698, 700 (N.Y. App. Div. 2009)).

Within this legal framework, the Court turns to defendant's motion to dismiss and the threshold question of whether plaintiff has plausibly pled a possessory interest in the subject personal property, an essential element to prevail on an action for conversion.

## C.  Analysis

Defendant contends that plaintiff has not demonstrated it has a security interest in the personal property at issue. Plaintiff asserts that the UCC statements attached to the Amended Complaint evidence that it obtained an assignment of AC 12's security interest in

the personal property located at the Premises. Although the UCC-1 financing statement filed by Sovereign Bank contains a description of the collateral, plaintiff did not attach to the Amended Complaint any of the financing documents that gave rise to the claimed security interest.

Rather, in opposition to the motion to dismiss, plaintiff attaches documents relating to an underlying financing transaction between Quinn Restaurant and Sovereign Bank. These documents, which plaintiff claims evidence an assignment by AC 12 to plaintiff of a security interest in the personal property that is the subject of the Amended Complaint and the conversion claim, include (i) allonges endorsing, from AC 12 to plaintiff, a Gap Mortgage Loan Note and a Consolidated and Restated Mortgage Loan Note given by Quinn Restaurant to Sovereign Bank, (ii) an assignment of an Assignment of Leases and Rents given by Quinn Restaurant to Sovereign Bank, (iii) an assignment of a Gap Leasehold Mortgage and Security Agreement also given by Quinn Restaurant to Sovereign Bank, (iv) an assignment of a Consolidation, Extension and Modification Agreement executed by Quinn Restaurant in favor of Sovereign Bank, and (iv) an Assignment of Cause of Action of AC 12 against Quinn Restaurant and other affiliates, including Raj & Raj[9]. These documents, which plaintiff claims gives rise to an assignment from AC 12 to plaintiff of a security interest in the personal property at the Premises, relate instead to a mortgage financing transaction between Quinn Restaurant and Sovereign Bank and not to a personal property security interest. At best, they show an assignment of a mortgage note and mortgage given by Quinn Restaurant to Sovereign Bank, and later assigned to AC 12 who, in turn, further assigned the mortgage loan documents to plaintiff. Additionally, while plaintiff, in opposing the motion to dismiss, includes various security agreements provided by Quinn Restaurant, Raj & Raj and their

---

[9] The Assignment of Cause of Action is a stipulation that is signed only by AC 12; the signature lines for plaintiff are blank.

affiliates to Sovereign Bank, there is no assignment of those security agreements by Sovereign Bank to AC 12, nor from AC 12 to plaintiff.

Plaintiff's submission of documents in its opposition to defendant's motion to dismiss raises the issue of what a court may consider in ruling on a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). As discussed below, a court is limited in what it may consider.

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111. *See also* Fed. R. Civ. P 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). For a court to consider a document that is external to the complaint as "incorporated by reference," there must be a "clear, definite and substantial reference" to the document in the complaint. *Helprin v. Harcourt*, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003). "A mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner, Inc.*, 440 F. App'x. 7, 9 (2d Cir. 2011). Conversely, "[m]ultiple references to, and lengthy quotations from, an outside document have been considered sufficiently substantial to incorporate the document into the complaint by reference." *Allen v. Chanel Inc.*, No. 12 CV 6758(RPP), 2013 WL 2413068, at *5 (S.D.N.Y June 4, 2013).

"Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). Finally, a court may also take judicial notice of matters of public record

when considering motions to dismiss. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991).

Here, as noted above, plaintiff has submitted documents in its opposition to the motion to dismiss which were not mentioned in or attached as exhibits to the Amended Complaint. In reviewing these submissions, the Court cannot find that the documents are incorporated by reference in the Amended Complaint or that plaintiff relied heavily on the documents as to render them integral to the Amended Complaint. The Amended Complaint alleges that plaintiff's security interest arose when its predecessor-in-interest, AC 12, financed the acquisition of certain restaurant machinery and equipment which was used by Raj & Raj in the operation of the restaurant at the Premises and then assigned the security interest to plaintiff. To support this allegation, one would expect, at the very least, to see a note and security agreement given by Raj & Raj to AC 12 to secure the lender's interest in the personal property acquired by Raj & Raj as a result of the financing. That is not the case. Plaintiff's allegation is contradicted by the documents which do not reflect the financing arrangement claimed by plaintiff to give rise to its purported lien and security interest in the personal property at issue.

The additional documents attached to plaintiff's opposition papers reflect that the underlying obligation arose from a $2,880,000 loan transaction by Sovereign Bank to Quinn Restaurant secured by certain assets of Quinn Restaurant, as well as certain assets of Harendra Singh and Ruby Singh, as individual guarantors, and various corporate entities in which Harendra Singh is the President and Secretary, including Raj & Raj, as corporate guarantors. Included in the various individual and corporate security agreements is a Security Agreement dated Oct. 27, 2009 executed by Raj & Raj in favor of Sovereign Bank guaranteeing the underlying loan made to Quinn Restaurant. These documents reflect an entirely different financing transaction than that which is alleged in the Amended Complaint

as giving rise to plaintiff's purported security interest. As such, the Court cannot conclude that the financing agreements relating to the loan by Sovereign Bank to Quinn Restaurant are incorporated by reference in the Amended Complaint or that plaintiff relied heavily on their terms so as to make them integral to the Amended Complaint. It bears repeating, the basis for plaintiff's purported security interest in the personal property at issue as alleged in the Amended Complaint describes an entirely different transaction than that recounted in the documents submitted in opposing the motion to dismiss. The Amended Complaint does not contain any factual assertions of a note and mortgage given by Quinn Restaurant nor a grant of a security interest by Raj & Raj as guarantor of the loan by Sovereign Bank to Quinn Restaurant. In sum, inclusion of a security agreement given by Raj & Raj to Sovereign Bank in connection with its financing transaction with Quinn Restaurant is incongruous to the facts pled in the Amended Complaint.

Moreover, even if the Court were to consider the assignment documents attached to plaintiff's opposition papers, the Court finds that these documents do not support plaintiff's allegation that it has a security interest in Raj & Raj's personal property. The purported assignment documents between AC 12 and plaintiff consist of: (i) a 1 one page Allonge dated June 30, 2017 to the Gap Mortgage Loan given by Quinn Restaurant; (ii) 1 page Allonge dated June 30, 2017 to the Consolidated and Restated Mortgage Loan Note given by Quinn Restaurant; (iii) two Assignments of Assignment of Leases and Rents given by Quinn Restaurant[10]; (iv) the Assignment of Cause of Action commenced by AC 12 against Quinn Restaurant, the Singhs and the corporate guarantors of the underlying loan from Sovereign Bank, which assignment is signed only by AC 12 and its counsel and is dated June 30, 2017 but the acknowledgement is notarized on June 29, 2017; (v) the Assignment of Gap Leasehold

---

[10] One of the assignments of the Assignment of Leases and Rents is dated June 30, 2017 but the acknowledgement was notarized on June 29, 2017.

Mortgage and Security Agreement executed by Quinn Restaurant; and (vi) the Assignment of Consolidation, Extension, and Modification Agreement executed by Quinn Restaurant. These documents reflect a mortgage transaction. Notably absent from these documents is an assignment to plaintiff of a security agreement signed by Raj & Raj or by any of the other corporate guarantors to Sovereign Bank, or the assignment of the security agreements from Sovereign Bank to AC 12. Simply put, plaintiff has not alleged facts from which the Court can infer that the assignment from AC 12 included a security interest in the personal property of Raj & Raj.

Further, the factual allegations regarding plaintiff's interest in the personal property at the Premises are inherently inconsistent with and contradicted by the statements asserted in the Amended Complaint and the documents attached to the Amended Complaint. Attached as Exhibits A and B to the Amended Complaint are lists of Equipment and Improvements in which AC 12 purportedly assigned its right, title and interest to plaintiff. However, the list of personal property set forth in Exhibit A includes at the end the January 2019 Cavayero Letter to the bankruptcy trustee which seeks to confirm that neither the trustee, the Debtor's estate nor McCormick 103 LLC has any right, title or interest in the restaurant furniture, fixtures, equipment, and inventory identified on a schedule annexed to the letter. That same letter asserts that the personal property is owned by Bethpage Bistro and seeks confirmation that the trustee will give Bethpage Bistro reasonable access to the Premises for the purpose of allowing Bethpage Bistro to inspect and, if needed, make arrangements for removal of the property. While no schedule is annexed to the January 2019 Cavayero Letter that plaintiff has attached, the Court takes judicial notice that the January 2019 Cavayero Letter was filed in the Raj & Raj Proceeding [Adv. Pro. No. 8-19-08064-las Dkt. No. 30, Exhibit P] and the schedule of property that is annexed to the letter filed in that action is identical to the list of restaurant furniture, fixtures, equipment, and inventory attached as Exhibit A to plaintiff's

Amended Complaint, but for some unexplained reason, the January 2019 Cavayero Letter is placed at the end of the list as opposed to the front.

Plaintiff also claims that the list of personal property in Exhibit B to the Amended Complaint further supports its allegation that it holds an interest in the personal property at the Premises. However, as noted above, Exhibit B is an appraisal prepared by Sencer Appraisal Associates, Inc. that has the caption "Bethpage Bistro (Restaurant) as of March 16, 2016" on the top of each page and sets forth the orderly liquidation value and fair market value of various items of restaurant furniture, fixtures, equipment, and inventory. There is no reference that any of the property listed is owned by Raj & Raj.

In similar fashion, plaintiff asserts, in paragraph 15 of the Amended Complaint, that the attorney for one of the other prospective purchasers[11] of the Debtor's assets confirmed with the bankruptcy trustee that a substantial amount of the restaurant furniture, fixtures, equipment and inventory at the Premises is not owned by the Debtor. In so alleging, plaintiff refers to the same January 2019 Cavayero Letter in Exhibit G to the Amended Complaint. In sum, plaintiff asks the Court to accept the factual allegation in the January 2019 Cavayero Letter that the personal property located at the Premises is not owned by the Debtor (and presumably could not be included in the sale of the Premises by the bankruptcy trustee) yet disregard that portion of the letter that states another entity, Bethpage Bistro, owns the very same personal property in which plaintiff alleges a security interest arising out of a financing transaction with Raj & Raj.

While the January 2019 Cavayero Letter appears to confirm that the Debtor's bankruptcy estate does not have an interest in the personal property at the Premises, there is no evidence that the trustee in fact received the letter or acknowledged such confirmation.

---

[11] Neither the attorney nor the prospective purchaser is identified in the Amended Complaint.

At minimum, the January 2019 Cavayero Letter and the Sencer appraisal raise questions as to the true ownership of some or all of the personal property at the Premises and the extent of plaintiff's interest, if any, in such property.

Even if the trustee and Mr. Cavayero agreed that the Debtor did now own the personal property at the Premises, additional questions arise as to whether Bethpage Bistro, per the January 2019 Cavayero Letter, removed some or all of its personal property, and whether any personal property of Raj & Raj remained at the Premises at the time defendant acquired the Premises in 2019 given the passage of time and the intervening events after Raj & Raj vacated the tenant space years before defendant's acquisition.

In short, because the Amended Complaint consists largely of conflicting allegations and conclusory labels regarding ownership of the personal property at issue and plaintiff's claimed interest in the personal property, plaintiff has failed to plead factual content that would allow the Court to draw the reasonable inference that plaintiff has a possessory interest in the subject property and that defendant is liable for conversion. Accordingly, the first and second causes of action for conversion must be dismissed. As such, the Court need not address defendant's arguments concerning whether plaintiff's security interest lapsed as to defendant under N.Y. U.C.C. § 9-515, and whether plaintiff is precluded from bringing this action under principles of waiver and estoppel, as these arguments presume that plaintiff plausibly pled that it has a possessory interest in the personal property which it failed to do.

In the third cause of action, which sounds in conversion and seeks money damages of $5,197,000 for defendant's alleged misconduct, plaintiff asserts that it is entitled to file a notice of pendency against the Premises. Because this Court found plaintiff's filing of the notice of pendency to be a misuse of Article 65 of the N.Y. C.P.L.R. and by Order dated June 10, 2020 cancelled the notice of pendency, this cause of action as it relates to the notice of pendency must be dismissed. Additionally, to the extent this third cause of action seeks

monetary damages for conversion, it suffers the same fate as the first and second causes of action as it fails to state a viable claim for conversion.

CONCLUSION

For the foregoing reasons, the Court grants the motion to dismiss by defendant, and the Amended Complaint is dismissed in its entirety. The Court retains jurisdiction over defendant's pending request for an award of additional damages and costs occasioned by the filing and cancellation of plaintiff's notice of pendency and any other sanctions the Court may consider in connection with plaintiff's filing of the notice of pendency and commencement of the action. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990).

So Ordered.



**Dated: December 22, 2020**
      **Central Islip, New York**

           **Louis A. Scarcella**
          **United States Bankruptcy Judge**